IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN DUNIGAN,

               Petitioner,               No. 2:11-cv-0961 MCE EFB P

    vs.

ROBERT HICKMAN,

               Respondent.        FINDINGS AND RECOMMENDATIONS

_____/

      Petitioner is a state prisoner proceeding without counsel on an application for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2009 judgment of conviction

entered against him in the Sacramento County Superior Court on a charge of first degree murder.

He raises nine cognizable grounds for federal habeas relief.  Upon careful consideration of the

record and the applicable law, the undersigned recommends that petitioner's application for

habeas corpus relief be denied.

**I.**    **Factual Background[1]**

        Defendant Kevin Wayne Dunigan killed Gary Veirs after Veirs
        punched him for swearing at Veirs's girlfriend when she rejected

---

     [1]  In its unpublished memorandum and opinion affirming petitioner's judgment of
conviction on appeal, the California Court of Appeal for the Third Appellate District provided
the following factual summary.

Dunigan's advances.  Dunigan killed Veirs by "gutt[ing]" him, i.e., "insert[ing a knife] in [Veirs's] side [and] ripp[ing] him open from one side to another."  Based on this evidence, a jury found defendant guilty of first degree murder while personally using a dangerous and deadly weapon.

Sentenced to prison for 26 years to life following a trial in which he represented himself, defendant appeals and raises the following two contentions: (1) the court erred in failing to order a competency hearing; and (2) the People presented insufficient evidence the murder was premeditated and deliberate.  Disagreeing, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

One August evening in 1995, Marie Morrissette was leaving her house on Stockton Boulevard in Sacramento when a man (later identified as defendant) approached her and said, "'Hey baby, what's up?'"  Morrissette "put [her] hand up . . . to let him know not to talk to [her]" and then "kept on walking."  Defendant responded in a loud voice, "'Well, fuck you then, bitch.'"

Just then, Morrissette's boyfriend, Veirs, came out of the house and told defendant, "'Don't talk like that to my old lady.'"  There was an "instant [fist] fight."  Veirs swung at defendant, defendant swung back, and within "seconds" the two were on the ground with Veirs on top.  Defendant reached for a knife that was on his left side by his pants.  The knife was about a foot long and "seemed . . . really sharp."  Defendant pulled it out of its sheath.  Morrissette yelled to Veirs, "'Babe, he's got a knife.'"  She tried unsuccessfully to kick the knife out of defendant's hand.  Veirs tried to "get up off him," but defendant was already stabbing him.  Defendant "gutted him" by inserting the knife in his side and "ripp[ing] him open from one side to another."

Morrissette ran inside the house and called 911.  Veirs followed her inside and was "bleeding everywhere."  An ambulance took Veirs to the hospital.  Veirs died from stab wounds to his chest.

Defendant was implicated in Veirs's murder in December 2008 after foreign DNA taken from Veirs's fingernails matched defendant's DNA.

Resp.'s Lodg. Doc. 4 at 1-2.

After the California Court of Appeal issued its decision on petitioner's direct appeal, petitioner filed two petitions for review and six collateral challenges to his conviction, in which he appears to have exhausted all of the claims contained in the instant petition.  Resp.'s Lodg.

Docs. 5, 7, 9, 11, 14, 16, 18, 20.  Both petitions for review and all of the collateral challenges were either summarily denied or denied on procedural grounds.  Lodg. Docs. 6, 8, 10, 12, 13, 15, 17, 19, 21.

## II.     Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

2   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

3   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

4   considering de novo the constitutional issues raised.").

5        The court looks to the last reasoned state court decision as the basis for the state court

6   judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

7   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

8   previous state court decision, this court may consider both decisions to ascertain the reasoning of

9   the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

10  a federal claim has been presented to a state court and the state court has denied relief, it may be

11  presumed that the state court adjudicated the claim on the merits in the absence of any indication

12  or state-law procedural principles to the contrary."  *Harrington*, 131 S. Ct. at 784-85.  This

13  presumption may be overcome by a showing "there is reason to think some other explanation for

14  the state court's decision is more likely."  Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

15  803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

16  support its conclusion, a federal habeas court independently reviews the record to determine

17  whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

18  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

19  review of the constitutional issue, but rather, the only method by which we can determine

20  whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.

21  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

22  there was no reasonable basis for the state court to deny relief."  *Harrington*, 131 S. Ct. at 784.

23        When it is clear, however, that a state court has not reached the merits of a petitioner's

24  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

25  ////

26  ////

habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[3]

### B. Petitioner's Claims

#### 1. <u>Unlawful Search and Arrest Warrants</u>

In his first claim for relief, petitioner argues that "false averment[s] and omissions of facts" were used to support the issuance of his search and arrest warrants.  Second Amended Petition, Dckt. No. 46 (Pet.) at 6.[4]  Specifically, he contends that the warrants were improperly based on an unreliable, falsified, and contaminated DNA sample, in violation of his rights under the Fourth and Fourteenth Amendments.  *Id.* at 7-15.  Petitioner argues that this court "has no alternative under settled constitutional principles but to quash the warrant and exclude the products of the search." *Id.* at 13.

In his second ground for relief, petitioner claims that the state court judge who authorized his arrest warrant violated his rights under the Fourth and Fourteenth Amendments because the warrant was not based on probable cause.  *Id.* at 16.  He argues that the judge knew the arrest warrant was based on unreliable DNA results.  *Id.*  Petitioner also claims that the "seizure of [his] person lacked probable cause in violation of the Fourth Amendment of the U.S. Const." *Id.* He  argues that his arrest warrant for first degree murder was invalid because the supporting affidavit did not support a finding that he harbored malice aforethought.  *Id.* at 17.  With these two claims, petitioner is essentially arguing that the search and arrest warrants in this case were issued without probable cause, in violation of the Fourth Amendment.[5]

---

[3]  The United States Supreme Court has recently granted certiorari in a case apparently to consider this issue.  *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

[4]  Page number references are to the page numbers placed by petitioner on the bottom of each page of his petition.

[5]  Petitioner also alleges that the issuance of his search and arrests warrants without probable cause violated his rights under the "equal protection and due process clauses of the

1    The United States Supreme Court has held that "where the State has provided an

2  opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

3  granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

4  search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976).  There

5  is no evidence before the court that petitioner did not have a full and fair opportunity to litigate

6  his Fourth Amendment claims in state court.  On the contrary, petitioner filed a motion to

7  exclude the evidence obtained from his arrest and search warrants, and argued that the

8  indictment should be dismissed because the prosecutor had destroyed evidence indicating that

9  petitioner's arrest and search warrants were supported by false and unreliable DNA evidence.

10  Clerk's Transcript on Appeal (CT) at 434-50.  Because petitioner had a fair opportunity to and

11  did, in fact, litigate his Fourth Amendment claims in state court, his first two grounds for relief

12  are barred in this federal habeas proceeding.  *Stone*, 428 U.S. at 494.

13              **2.  Admission of Petitioner's Compelled Statements to Police**

14    In his next ground for relief, petitioner claims that the introduction into evidence of his

15  "compelled" statements to the police violated his rights as set forth in *Miranda v. Arizona*, 384

16  U.S. 436 (1966) (*Miranda* rights), and his Fifth Amendment right to remain silent.  Pet. at 18-23.

17  Petitioner also argues that the prosecutor introduced knowingly false testimony about these

18  statements at the preliminary hearing.  *Id.* at 21.  After setting forth the background and the

19  applicable law, the court will address these claims below.

20                           **a.  Background**

21    The state court record reflects that on January 14, 2008, Detective Keller obtained a

22  search warrant for the collection of a DNA sample from petitioner.  CT at 771.  On January 16,

23  

24  Fourteenth Amendment to the U.S. Const."  *Id.* at 18.  These claims are vague, conclusory, and
    unsupported by any factual allegations and should be denied on that basis.  Petitioner has not

25  demonstrated that any law or regulation with respect to the issuance of the search or arrest
    warrants was applied in a discriminatory fashion, or that state authorities enforced any law in a

26  discriminatory way.

2009, Detectives Keller and Jason visited petitioner, who was then housed at Pelican Bay State Prison.  *Id.*  After being advised of his *Miranda* rights, petitioner "denied any knowledge of a murder in 1995 and invoked his right to remain silent."  *Id.*  Detective Keller then served the search warrant and "collected a DNA sample."  *Id.*  Petitioner agrees that, "wary of Keller's line of questions petitioner invoked the right to remain silent."  Pet. at 19.

Subsequently, on April 8, 2009, petitioner was questioned on two separate occasions at the Sacramento County Jail by prosecution investigator Ron Garvrick.  CT at 1481-1518, 1519-30.[6]  At the beginning of the first interview, Garvrick told petitioner that he was investigating whether an individual named Oveida Burley committed the 1995 murder.  Specifically, Garvrick stated, "it's less about you as it is about . . . Burly O-Vieda."  *Id.* at 1481.  Garvrick asked petitioner whether he knew "Burly O'Vieda."  *Id.*  Petitioner stated that he did.  *Id.*  Garvrick explained to petitioner that Burley was arrested in 1995 for murder, that he was then released "because of some witness stuff," but that "the Sacramento Police Department is looking at this guy again" and that the police were "looking at running this guy's DNA again."  *Id.* at 1482, 1483.  Petitioner interpreted these statements by Garvrick to mean that "Oveda Burley was the suspect and not petitioner," and that petitioner would not be prosecuted for the murder.  Pet. at 19.  Petitioner claims that this deception by Garvrick was "a compellment to induce a statement," and constituted "overreaching."  *Id.* at 19-20.

Mr. Garvrick then reminded petitioner that the police had previously obtained a DNA sample from him but that he had not waived his right to remain silent and refused to be

_____

[6] During this interview, petitioner explained to Detective Garvrick that he was currently serving a sentence of three years in County Jail after police found a gun in his vehicle.  Resp.'s Lodg. Doc. 31 at 15, 26.  Petitioner further explained that after he was involved in "a couple of fights in county jail" he was temporarily transferred to Pelican Bay State Prison.  *Id.* at 25.  It appears that petitioner was later returned to County Jail to serve the rest of his three-year sentence.  *Id.* at 25-26.  There is no indication from the record before the court that petitioner was transferred to County Jail from Pelican Bay for the purpose of being questioned for the murder of Gary Veirs.  Rather, it appears that the County Jail was simply where petitioner was being housed at the time.

interrogated. CT at 1483. Petitioner agreed with these statements. *Id.* Yet, petitioner spoke with Garvick on this occasion. Garvrick showed petitioner a picture of the victim and asked whether he "knew him at all." *Id.* Petitioner denied that he knew the victim and stated that he had never seen him. *Id.* at 1484, 1487, 1488. Garvrick told petitioner that he "had to advise [him] of [his] rights," but stated that he would be questioning petitioner about the matters he had just discussed. *Id.* at 1485. Petitioner said, "The only thing I know that the – the officer came and told me that my DNA was found on the scene and he had it since 1995. But DNA's been in the FBI database since '94." *Id.* Garvrick then gave petitioner the *Miranda* warnings. *Id.* at 1486. Petitioner stated that he understood his rights.

Petitioner told Garvrick that he "grew up" very close to where the stabbing took place, on Tamoshanter Way, but that he had moved away by the time of the murder. *Id.* at 1487, 1491, 1494. Petitioner also stated, however, that his mother continued to own the house on Tamoshanter Way after petitioner moved out, and that he lived there "in '90." *Id.* at 1492. Petitioner explained that at the time of the stabbing he lived in his brother's apartment in Rancho Cordova. *Id.* at 1492, 1494.

Later that same day, investigator Garvrick returned to the jail to ask petitioner some additional questions. *Id.* at 1520, *et seq.* He first told petitioner they were trying to track down a tip that someone named "Icewater" had committed the murder. *Id.* at 1520. He asked petitioner to listen to the tipster's voice to determine whether he recognized the voice "from somebody in the neighborhood." *Id.* Garvrick also stated, "we're still trying to make this case on, ah, Burley." *Id.* Garvrick reminded petitioner that he been advised of his constitutional rights at the interrogation earlier in the day, and asked whether he wanted to be advised of his rights again. *Id.* at 1521. Petitioner indicated that since Garvrick had already advised him of his rights, he did not need to do so again. *Id.* After listening to the audiotape, petitioner stated that he did not recognize the tipster's voice. *Id.* at 1524.

////

9

1      At petitioner's preliminary hearing, the prosecutor asked Mr. Garvrick whether he had

2  asked petitioner "where he lived at or if he ever lived near Stockdale."  CT at 569.  Garvrick

3  responded that petitioner "said he lived on Tamoshanter at the time, near 63rd Avenue."  *Id.*

4  Later, when petitioner was cross-examining Mr. Garvrick, the following colloquy took place:

5              Q.  (by petitioner): And you said that the victim told you that he
             lived at that time at the address on Tamoshanter?
6
             A.  No, sir.  You told me you lived on Tamoshanter next to 63rd
7            Avenue.

8              Q.  I told you that at the time of this occurrence?

9              A.  That you had lived at that address.

10             Q.  Okay.

11  CT at 572.

12      During the trial proceedings, petitioner filed a motion to suppress his statements to Mr.

13  Garvrick.  Reporter's Transcript on Appeal (RT) at 136-49.  Mr. Garvrick was called as a

14  witness at that hearing.  *Id.*  Petitioner argued that his statements were coerced.  *Id.* at 149.  The

15  trial court denied the motion, stating, "the Court does not find a violation of any decision of law

16  of either state or federal, a violation of any constitutional law, either state or federal, in terms of

17  the taking of the statement by the detective regarding Mr. Dunigan."  *Id.*

18                        **b.  Petitioner's Arguments**

19      Petitioner claims that he suffered a "triple constitutional violation," noting first that

20  Detective Keller obtained a DNA sample from him at Pelican Bay State Prison.  Pet. at 19.

21  Petitioner argues that investigator Garvrick violated the *Miranda* decision when, at the first

22  interview on April 8, he asked petitioner several questions before he advised him of his

23  constitutional rights.  *Id.* at 19, 20.  He contends that he should have been advised of his rights

24  before any questions were asked.  *Id.*  Petitioner also argues that his statements to Garvrick were

25  coerced by Garvrick's deceptive tactics.  *Id.*  Finally, petitioner claims Garvrick violated his

26  constitutional rights and "conspired with the prosecutor" when he testified at the preliminary

                                    10

1  hearing that petitioner told him he lived on Tamoshanter Way at the time of the crime when, in

2  fact, he had told Garvrick that he had moved away from that location by the time the murder

3  took place. *Id.* at 21.  Petitioner argues that the prosecutor's "knowing use of false testimony left

4  uncorrected" was a violation of his Fourteenth Amendment right to due process.  *Id.*

5                                    c. <u>Analysis</u>

6          Petitioner's claim, if any, that his right to remain silent was violated when his DNA

7  sample was taken at Pelican Bay State Prison is meritless.  The right to remain silent "protects an

8  accused only from being compelled to testify against himself, or otherwise provide the State with

9  evidence of a testimonial or communicative nature" and does not prohibit the taking of physical

10  evidence, such as a DNA sample.  *See Schmerber v. California*, 384 U.S. 757, 761 (1966)

11  (analysis of blood sample taken without defendant's consent did not violate his Fifth

12  Amendment rights); *United States v. Reynard*, 473 F.3d 1008, 1021 (9th Cir. 2007) (the

13  compelled extraction of blood for DNA collection does not violate a prisoner's Fifth Amendment

14  right against self-incrimination).  Accordingly, the extraction of petitioner's DNA at the prison

15  did not violate his right to remain silent.

16          Petitioner's claim that his *Miranda* rights were violated during the two interrogations on

17  April 8, 2009 must also be denied, for several reasons.  In *Miranda*, the United States Supreme

18  Court held that the Fifth Amendment privilege against self-incrimination prohibits the admission

19  into evidence of statements obtained from a suspect during "custodial interrogation" without a

20  prior warning of certain rights.  384 U.S. at 444.  Custodial interrogation means "questioning

21  initiated by law enforcement officers after a person has been taken into custody or otherwise

22  deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.  Whether a

23  suspect is "in custody" for purposes of *Miranda* requires application of an objective test. *J.D.B.

24  v. North Carolina*, ___ U.S. ___, 131 S.Ct. 2394, 2402 (2011); *Yarborough v. Alvarado*, 541

25  U.S. 652, 662-63 (2004).  Two inquiries are necessary for a determination of an individual's "in

26  custody" status under this test: (1) what were the overall circumstances surrounding the

1    interrogation; and (2) given those circumstances, would a reasonable person in the suspect's

2    situation have felt free to terminate the interrogation and leave.  *J.D.B.*, 131 S.Ct. at 2402;

3    *Yarborough*, 541 U.S. at 662-63; *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *Stansbury v.*

4    *California*, 511 U.S. 318, 322 (1994).  The questioning of a confined prisoner about events that

5    occurred outside the prison is not necessarily custodial, but depends on the circumstances

6    surrounding the interrogation.  *Howes v. Fields*, ___ U.S. ___, 132 S.Ct. 1181 (2012) (defendant

7    was not taken into custody for purposes of the *Miranda* rule when he was escorted from his cell

8    and interrogated in a conference room within the prison about events that had occurred outside

9    of the prison).

10          Under the circumstances of this case, it appears that petitioner was not "in custody" for

11   purposes of the *Miranda* rule. There is no evidence that petitioner believed he was not free to

12   terminate the April 8 interrogation.  He was not prevented from leaving the interrogation room,

13   the questioning was not lengthy, he was not physically restrained, and he was not told that he

14   was required to answer investigator Garvrick's questions.  As noted above, the mere fact that

15   petitioner was already incarcerated due to an earlier conviction during the questioning (see n. 6

16   supra) is not dispositive of this issue.  *Howes*, 132 S.Ct. at 1191.  As pointed out in *Howes*,

17   "[i]nterrogated suspects who have previously been convicted of crime live in prison." *Id.*  Thus,

18   "[t]aking a prisoner aside for questioning—as opposed to questioning the prisoner in the

19   presence of fellow inmates—does not necessarily convert a 'noncustodial situation . . . to one in

20   which Miranda applies.'"  *Id.* (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per

21   curiam)).

22          In any event, the state court record reflects that petitioner was advised of his

23   constitutional rights at the beginning of the interrogation on April 8, but waived them and agreed

24   to talk.  Accordingly, even assuming *arguendo* that he was "in custody" during the two

25   interrogations on April 8, petitioner has failed to show that his *Miranda* rights were violated.  It

26   is true that petitioner answered several questions prior to receiving his *Miranda* warnings.  In his

12

1    answers, petitioner admitted that he knew Oveida Burley, denied that he knew the victim, and

2    stated that he had been told his DNA was found at the scene of the crime.  These statements were

3    not in any way inculpatory and therefore would not have contributed to the verdict in this case.

4    Accordingly, any *Miranda* violation that may have resulted from Garvrick's failure to advise

5    petitioner of his rights before asking these questions was harmless.  *See Arizona v. Fulminante*,

6    499 U.S. 279, 295-96 (1991) (the admission of evidence obtained in violation of *Miranda* is

7    subject to harmless error analysis).

8         Petitioner also claims that his statement to Mr. Garvrick that he had lived on

9    Tamoshanter Way was involuntary because of Garvrick's deceptive remarks indicating that

10   Oveida Burley, and not petitioner, was the target of the investigation.  There is no evidence to

11   support this claim.

12        The Fourteenth Amendment to the United States Constitution demands that confessions

13   be made voluntarily.  *See Lego v. Twomey*, 404 U.S. 477, 483-85 (1972).  In determining

14   whether a confession is voluntary, "the question is 'whether the defendant's will was overborne

15   at the time he confessed.'"  *Haynes v. Washington*, 373 U.S. 503, 513 (1963).  "The line of

16   distinction is that at which governing self-direction is lost and compulsion, of whatever nature or

17   however infused, propels or helps to propel the confession."  *Collazo v. Estelle*, 940 F.2d 411,

18   416 (9th Cir. 1991) (en banc) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)).

19   "Under the Fourteenth Amendment, a confession is involuntary only if the police use coercive

20   means to undermine the suspect's ability to exercise his free will."  *Pollard v Galaza*, 290 F.3d

21   1030, 1033 (9th Cir. 2002).  Misrepresentations made by law enforcement in obtaining a

22   statement do not constitute coercive conduct unless they would cause a suspect's will to be

23   overborne.  *Id.* at 1034.

24        There is no evidence here that petitioner's will was overborne at the time he told

25   investigator Garvrick that he "grew up" on Tamoshanter Way.  Mr. Garvrick's statement that the

26   police were primarily investigating Oveida Burley, even if false, was not so coercive that it

13

would have caused petitioner to lose "governing self-direction."  Nor is the fact that petitioner

was in jail when he was questioned sufficiently compelling to overbear petitioner's will in light

of the totality of the circumstances.  *See Howes*, 132 S.Ct. at 1191 ("For a person serving a term

of incarceration . . . the ordinary restrictions of prison life, while no doubt unpleasant, are

expected and familiar and thus do not involve the same 'inherently compelling pressures' that

are often present when a suspect is yanked from familiar surroundings in the outside world and

subjected to interrogation in a police station.").  Cases in which convictions have been

overturned on this basis have involved circumstances far more coercive than those involved in

this case.  *See, e.g., Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (confession found to be coerced

by officers' false statements that state financial aid for defendant's infant children would be cut

off, and her children taken from her, if she did not cooperate); *Rogers v. Richmond*, 365 U.S.

534, 541-45 (1961) (defendant's confession was coerced when it was obtained in response to a

police threat to take defendant's wife into custody); *Spano v. New York*, 360 U.S. 315, 323

(1959) (confession found to be coerced where police instructed a friend of the accused to falsely

state that petitioner's telephone call had gotten him into trouble, that his job was in jeopardy and

that loss of his job would be disastrous to his three children, his wife and his unborn child).

Under the circumstances presented here, petitioner's statement that he used to live on

Tamoshanter Way was not coerced or involuntary.

Petitioner also argues that the prosecutor's use of knowingly false testimony at the

preliminary hearing; specifically, Garvrick's testimony that petitioner told him he lived on

Tamoshanter Way at the time of the crime, violated his federal constitutional rights.  It is clearly

established that "a conviction obtained by the knowing use of perjured testimony must be set

aside if there is any reasonable likelihood that the false testimony could have affected the jury's

verdict."  *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985).  There are three components to

establishing a claim for relief based on the prosecutor's introduction of perjured testimony at

trial.  Specifically, the petitioner must establish that: (1) the testimony or evidence was actually

1   false; (2) the prosecutor knew or should have known that the testimony or evidence was actually

2   false; and (3) the false testimony or evidence was material.  *Hein v. Sullivan*, 601 F.3d 897, 908

3   (9th Cir. 2010).

4         There is no evidence in this case that the prosecutor knew Garvrick's statement at the

5   preliminary hearing that petitioner told him he "lived on Tamoshanter at the time" was false.

6   Even if he did, the statement made by Garvrick at the preliminary hearing was not material to the

7   outcome of petitioner's trial.  At trial, petitioner extensively cross-examined Garvrick about his

8   testimony at the preliminary hearing.  RT at 393-96.  Garvrick clarified that petitioner told him

9   he had lived on Tamoshanter Way in the past but did not live there at the time of the crime.  *Id.*

10   at 393.  Given this clarification at trial before the jurors, Garvrick's statement at the preliminary

11   hearing could not have had an impact on the verdict in this case.

12         For all of the foregoing reasons, petitioner is not entitled to relief on his claims regarding

13   his statements to investigator Garvrick.

14         **3.  <u>Denial of Right to Fair Trial and Unbiased Decisionmaker</u>**

15            **a.  <u>Petitioner's Arguments</u>**

16         In his fourth claim for relief, petitioner argues that the Sacramento County Sheriff's

17   Office conspired with the prosecutor to "circumvent" his defense.  Pet. at 23.  Specifically,

18   petitioner alleges that a Sheriff's Deputy confiscated his legal research and "defense documents"

19   from his cell for the purpose of allowing the prosecutor to discover "possible defenses petitioner

20   may address."  *Id.*  Petitioner claims that after the prosecutor reviewed the stolen documents, his

21   "ability to circumvent petitioner's defense increased substantially."  *Id.* at 24.  Petitioner argues

22   that this situation violated his Sixth Amendment right to present a defense.  *Id.*

23         Petitioner also argues that jail administrators "perpetuated these acts" by planting inmate

24   operatives for the purpose of stealing his documents and orchestrating "pod shakedowns" in

25   order to allow access to petitioner's work product when he was away from his cell.  *Id.*

26   ////

1   According to petitioner, these "operatives" would then give the information obtained from

2   petitioner's cell to the District Attorney's Office.  *Id.*  Petitioner states that these activities were

3   "evidence[d]" when he filed a complaint against a state court judge who then vacated a pending

4   court date "pursuant to a pod shakedown disclosing the complaint."  *Id.*

5        Petitioner further alleges that several motions he filed in state court were improperly

6   denied without allowing him the opportunity to argue the motions, and that his request for a

7   single cell was denied, thereby preventing him from making "a full confidential defense," in

8   violation of "the Sixth and Fourteenth Amendments."  *Id.* at 25.  Petitioner specifically directs

9   the court's attention to his unsuccessful "motion to enforce confidential pro per privileges,"

10   which the trial judge denied without oral argument.  In that motion, petitioner claimed that "the

11   Sacramento Sheriff's Department does conspire with the Sacramento County District Attorney's

12   office by using their dominion and control over the incarcerated pro per defendant, to illegally

13   search, confiscate and browse through the inmate's pro per defense, notwithstanding the fact that

14   they use 'confidential informants' (i.e. operatives) as cellmates of the pro per defendant(s), who

15   also use these subversive means and other more closely designed processes for these same

16   purposes."  CT at 25-26; RT at 15-16.

17        Petitioner also claims that his "Challenge for Cause" was improperly denied without a

18   hearing even though the judge "knew he had failed to properly respond to petitioner's challenge

19   in a timely manner."  Pet. at 26.  In support of this claim, petitioner directs the court's attention

20   to a document he filed in the trial court, which the trial judge construed as a request to challenge

21   him for cause pursuant to the California Code of Civil Procedure (CCP).  CT at 238.  The trial

22   judge ordered the motion stricken pursuant to CCP § 170.4(b), on the grounds that "(1) the filing

23   was not properly verified; (2) the fact that a court ruled against a party on one or more occasions

24   is not indicia of bias or prejudice; (3) the vague and conclusory allegations of prejudice are

25   insufficient to support bias; (4) the allegations of facts and references to circumstances not

26   pertinent and appropriate to the issued and/or so inconsequential as not to be probative of bias do

1  not support a challenge; and (5) the defendant may not create his own bias by suing or making

2  allegations against the court in other forums."  *Id.*

3      Finally, petitioner argues that the trial judge's "abuse of discretion" and "this form of

4  arbitrary administration of justice" is "violative of both the equal protection and due process

5  clause of the Fourteenth Amendment."  Pet. at 26.  Petitioner claims that the foregoing events

6  violated "the Due Process Clause of the Fourteenth Amendment which also implicates a pro se

7  prisoner's Sixth Amendment Right to put on a full defense."  *Id.*

8                              **b.  <u>Applicable Law</u>**

9      "A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*,

10  349 U.S. 133, 136 (1955).  A judge "may not adopt procedures that impair a defendant's right to

11  due process or his other rights guaranteed by the constitution."  *United States v. Thompson*, 827

12  F.2d 1254, 1258 (9th Cir. 1987).  In order to prevail on a claim of judicial bias, a petitioner must

13  overcome a "strong presumption that a judge is not biased or prejudiced."  *Sivak v. Hardison*,

14  658 F.3d 898, 924 (9th Cir. 2011) (quoting *Rhoades v. Henry*, 598 F.3d 511, 519 (9th Cir.

15  2010)).

16      Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to

17  present a defense and this right is "a fundamental element of due process of law."  *Washington v.*

18  *Texas*, 388 U.S. 14, 19 (1967).  *See also Crane v. Kentucky*, 476 U.S. 683, 687, 690 (1986);

19  *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972);

20  *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009).  A defendant's right to present a defense

21  stems both from the Fourteenth Amendment right to due process and the Sixth Amendment right

22  "to have compulsory process for obtaining witnesses in his favor."  *Moses*, 555 F.3d at 757.

23      A defendant's due process rights are also violated when a prosecutor's misconduct

24  renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

25  ////

26  ////

1  Prosecutorial misconduct violates due process when it has a substantial and injurious effect or

2  influence in determining the jury's verdict.  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th

3  Cir. 1996).

### c. Analysis

5       There is no evidence in this case that petitioner failed to receive a fair trial in a fair

6  tribunal or that the prosecutor committed misconduct.  Petitioner's allegations concerning

7  collusion between the Sheriff's Department and the District Attorney's office, including his

8  allegations regarding the use of inmate informants to steal information from petitioner and give it

9  to the prosecutor, lack underlying factual support and should be rejected on that basis.  Petitioner

10  has provided no evidence, apart from his unsupported allegations, that these alleged events

11  actually took place.  Bare conclusions, unsupported by allegations of underlying fact, are

12  insufficient to establish a federal constitutional violation.  *Shepherd v. Nelson*, 432 F.2d 1045,

13  1046 (9th Cir. 1970).

14       Nor has petitioner demonstrated that the trial judge improperly denied his filed motions,

15  was biased against him, or otherwise prevented him from receiving a fair trial.  The record does

16  not support petitioner's allegations that his motions were improperly scheduled or denied.  The

17  record also reflects that petitioner was able to mount a thorough defense to the charges against

18  him, which included calling his own witnesses and cross-examining the prosecution witnesses.

19  Petitioner has failed to demonstrate that his trial proceedings were unfair or that the judge,

20  prosecutor, or jail authorities violated his constitutional rights through collusion or in any other

21  manner.  Accordingly, he is not entitled to relief on his claims of judicial bias and fundamental

22  unfairness in the handling of his trial proceedings.

### 4. Suppression of Exculpatory Evidence

### a. Petitioner's Arguments

25       In his next claim for relief, petitioner alleges that the prosecutor and various state court

26  judges colluded to deny him the right to discovery of exculpatory evidence regarding the DNA

evidence linking him to the crime.  Pet. at 27-32.  Petitioner explains that he was seeking

"exculpatory evidence such as petitioner's 1994 DNA profile and actually any other exculpatory

evidence such as previous DNA testing of the evidence."  *Id.* at 27; *see also* CT at 95-104.

Petitioner further argues that the trial judge gave the prosecutor too much time to provide

requested discovery.  Pet. at 27; RT at 15-17.  He argues that this constituted "collusion."  Pet. at

28.

Petitioner also argues that he sought to compel the same DNA evidence at a preliminary

hearing, but the presiding judge "quickly changed the subject."  *Id.*  Petitioner alleges that the

prosecutor "deceived the court once again, and Judge Fall has allowed it to go unquestioned."

*Id.*  He argues, "surely it is a manifest abuse of discretion for the magistrate not to order the

prosecutor to produce the requested evidence."  *Id.* at 29.  Petitioner also directs the court's

attention to another hearing before a different state court judge, in which the parties discussed

the prosecutor's compliance with petitioner's discovery requests with respect to the DNA

evidence.  *Id.*; RT at 36, *et seq.*  Petitioner contends that the judge improperly refused to grant

his requests for additional discovery and allowed the prosecutor to deceive him when he stated

that the discovery was unavailable or had already been produced.  Pet. at 29-30; *see* RT at 39-42.

Petitioner alleges that the judge "appears to be way over the top with regards to her collusion

with the prosecutor."  Pet. at 30.

Petitioner also alleges that the state court judges who ruled on his discovery requests "all

have a common bond in that they supported the prosecutor's perjury," which "allowed the

prosecutor to suppress requested exculpatory evidence that would've explained away the

charges."  *Id.* at 31.  Petitioner claims that the improper actions of the prosecutor and the state

court judges who presided over his trial proceedings violated the dictates of *Brady v. Maryland*,

373 U.S. 83 (1963), and the due process clause of the Fourteenth Amendment.  *Id.* at 32.

////

////

b.  **Applicable Law**

The United States Supreme Court has held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  *See also Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006) ("A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused").  There are three components of a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  In order to establish prejudice, petitioner must demonstrate that "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Id.* at 289.

c.  **Analysis**

Petitioner has failed to establish that the prosecutor violated the requirements of *Brady* in failing to turn over discovery.  There is no evidence, apart from petitioner's unsupported speculation, that any evidence related to DNA testing was favorable to petitioner, that it was suppressed by the prosecution, or that there is a reasonable probability the result of the trial would have been different if the evidence had been disclosed to him.  In fact, petitioner states that the facts only "suggest" the DNA evidence he seeks even existed.  Pet. at 32.  This is insufficient to establish a *Brady* violation.

Nor has petitioner established that any state court judge colluded with the prosecutor to deny petitioner exculpatory evidence or otherwise acted in such a way as to deny petitioner the right to a fair trial.  Petitioner's unsupported allegations are insufficient to establish that a due process violation occurred in connection with the provision of discovery in this case.  The mere fact that several state court judges denied petitioner's requests for discovery does not establish

20

that they were biased against petitioner or otherwise violated his rights.  Accordingly, he is not entitled to relief on these claims.

### 5.  Ineffective Assistance of Counsel

#### a.  Petitioner's Arguments

In his next claim, petitioner argues that Mr. Broome, an attorney hired by his family to represent him, rendered ineffective assistance of counsel when he: (1) used self-defense "as his assertion for petitioner's defense;" (2) failed to acquire "DNA exculpatory evidence," and (3) declined to defend petitioner's case using the theory that the DNA evidence connecting petitioner to the crime was unreliable.  Pet. at 33-37.  Petitioner explains that when "it became clear that [counsel] was in collusion with the prosecution," petitioner "had no alternative but to relieve Broome as counsel." *Id.* at 34.  After discharging his attorney, petitioner represented himself during the trial proceedings, although it appears that counsel was present at the preliminary hearing in an advisory capacity.  Petitioner argues that trial counsel's "ineffectiveness violated the Sixth Amendment." *Id.*

Petitioner also argues that his trial counsel colluded with the trial judge to violate his constitutional rights.  Specifically, he explains that he was unable to substitute another counsel at a "*Marsden*" hearing; he was ordered to leave the courtroom for a brief period during the hearing on his motion to discharge his retained counsel; and the prosecutor was allowed to attend the hearing, thereby "inva[ding] the defense camp." *Id.* at 34-35.  Petitioner argues that his trial counsel was responsible for allowing all of this to take place, and that counsel must have been "representing conflicting interests." *Id.* at 35.  Petitioner also argues that the trial judge's "abuse of discretion" in conducting the "*Marsden*" hearing in this manner "shocks the conscience." *Id.* at 36.[7]

---

[7]  In *People v. Marsden*, 2 Cal.3d 118 (1970), the California Supreme Court held that when a criminal defendant in California asserting inadequate representation seeks to discharge appointed counsel and substitute another attorney, the trial court must permit him to explain the

1    Petitioner further contends that he suffered prejudice from his trial counsel's actions

2    when, at the preliminary hearing, after counsel had been relieved but was observing the

3    proceedings from the courtroom, the prosecutor advised the court that certain motions filed by

4    petitioner had been withdrawn by petitioner's counsel after he was hired.  *Id.*  Petitioner's former

5    counsel agreed that he had not proceeded with those motions.  Petitioner argues that the

6    prosecutor, in effect, used his former trial counsel to "circumvent petitioner's defense motions,"

7    thereby violating petitioner's right to defend himself at the preliminary hearing.  *Id.*  Petitioner

8    also argues that the trial judge abused her discretion in allowing the prosecutor to "circumvent"

9    his motions in this way.  *Id.*  He argues, "surely the magistrate's refusal to allow petitioner to

10   make a full defense violated both the Sixth and Fourteenth Amendments."  *Id.* at 37.

11                          **b.  Applicable Law**

12      To support a claim of ineffective assistance of counsel, a petitioner must first show that,

13   considering all the circumstances, counsel's performance fell below an objective standard of

14   reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After a petitioner

15   identifies the acts or omissions that are alleged not to have been the result of reasonable

16   professional judgment, the court must determine whether, in light of all the circumstances, the

17   identified acts or omissions were outside the wide range of professionally competent assistance.

18   *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  "Counsel's errors must be 'so serious as

19   to deprive the defendant of a fair trial, a trial whose result is reliable.'"  *Richter*, 131 S.Ct. at 787-

20   88. (quoting *Strickland*, 466 U.S. at 687).  Surmounting the bar imposed by *Strickland* was

21   "never an easy task," and "establishing that a state court's application of *Strickland* was

22   unreasonable under § 2254(d) is all the more difficult."  *Id.* at 788.

23
_____

24   basis of his contention and to relate specific instances of the attorney's inadequate performance.
     Although petitioner describes the motion he filed in the trial court as a *Marsden* motion, he was

25   actually seeking to discharge his retained counsel and represent himself, pursuant to *Faretta v.
     California*, 422 U.S. 806, 821 (1975).  As the trial judge stated, "You can't file a *Marsden*

26   motion on a privately hired attorney."  RT at 22.  Petitioner's *Faretta* motion was granted and he
     represented himself at trial.

1     Second, a petitioner must establish that he was prejudiced by counsel's deficient

2  performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable

3  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

4  been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine

5  confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just

6  conceivable." *Richter*, 131 S.Ct. at 792.

7               **c. <u>Analysis</u>**

8     Petitioner's claim that his trial counsel rendered ineffective assistance because of the

9  events related above lacks merit and should be denied. Petitioner has failed to demonstrate

10  either deficient performance by Mr. Broome, or that he was prejudiced by Broome's

11  performance. First, even assuming *arguendo* that Broome had decided to present a defense of

12  self-defense, this decision was rendered moot when petitioner discharged Mr. Broome before the

13  trial took place and presented his own defense. Second, petitioner has failed to demonstrate

14  ineffective assistance of counsel, or any other violation of his constitutional rights, at the hearing

15  on his *Faretta* motion to represent himself. The trial judge granted petitioner's *Faretta* motion

16  after advising him of the rights he would be waiving by proceeding without counsel. RT at 23-

17  26. There is no constitutional violation under these circumstances.

18     To the extent petitioner is claiming that the hearing on his motion to represent himself

19  violated *Marsden*, his arguments are meritless. As explained, petitioner's was not seeking

20  removal of appointed counsel but instead was seeking to discharge his retained attorney and

21  represent himself. Therefore, the motion was not properly brought pursuant to *People v.*

22  *Marsden*, but was actually based on the decision in *Faretta v. California*. Accordingly, the

23  *Marsden* decision has no bearing on these events. Nor has petitioner demonstrated that he

24  suffered prejudice as a result of his trial counsel's decision to abandon petitioner's previously

25  filed motions. After a review of the record, the court concludes that there is no reasonable

26  probability these motions would have been granted even if counsel had decided to pursue them.

Finally, petitioner has failed to demonstrate that any actions by any state court judge rendered his trial proceedings fundamentally unfair, or that there was any improper collusion between any judge and the prosecutor, or anyone else, in connection with the matters described above.  Accordingly, petitioner has also failed to demonstrate that his rights under the Fourteenth Amendment were violated.

The state court decision denying petitioner's claims of ineffective assistance of counsel and due process violations is not contrary to or an unreasonable application of United States Supreme Court authority.  Accordingly, petitioner is not entitled to habeas relief on these claims.

### 6. __Denial of Petitioner's Motion to Set Aside the Information__

In his next ground for relief, petitioner claims that the trial court's denial of his motion to set aside the information pursuant to Cal. Penal Code § 995 violated his rights under the Sixth and Fourteenth Amendments because of "the arbitrary and outrageous manner it was denied." Pet. at 37.  Petitioner describes in detail his objections to the manner in which his motion was heard and denied.  *Id.* at 37-48.  He contends that the evidence introduced at the preliminary hearing was insufficient to support the charges brought against him.  *Id.*  He also alleges that the state court judge who denied the motion "abused her discretion to the point of a conspiracy."  *Id.* at 46.[8]

As explained above, an application for a writ of habeas corpus by a state prisoner can be granted only for violations of the Constitution or laws of the United States.  *Engle v. Isaac*, 456 U.S. 107, 119 (1982).  A federal writ is not available for alleged error in the interpretation or

---

[8] Petitioner makes several miscellaneous allegations regarding his inability to photocopy and file more than 100 pages of a document without a court order, the "arbitrary acts of the state against petitioner," and retaliation and a "vendetta" against petitioner for his religious and political beliefs   Pet. at 47-49.  Petitioner claims that these events violated his First and Fourteenth Amendment rights.  *Id.*  Petitioner's allegations in this regard are unduly vague and confusing and fail to state a cognizable federal habeas claim.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).

1   application of state law.  *Wilson*, 131 S. Ct. at 16.  Since there is no federal constitutional right to

2   a preliminary hearing, *see Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975) and *Ramirez v. State*

3   *of Ariz.*, 437 F.2d at 119 (9th Cir. 1971), and therefore no right to a dismissal for insufficient

4   evidence after a preliminary hearing, petitioner's allegations fail to state a cognizable federal

5   habeas claim.  The denial of a § 995 motion to dismiss is a state law claim which is not

6   cognizable on federal habeas review.  *Lopes v. Campbell*, 408 Fed.Appx 13, 15 (9th Cir. 2010)

7   (petitioner's claim that the trial court erroneously denied his motion under Cal. Penal Code § 995

8   "not cognizable on federal habeas review"); *Johnson v. Hedgpeth*, No. ED CV 09-1577-

9   GW(CT), 2010 WL 1848165, at *14 (C.D. Cal. Feb. 25, 2010) (same).

10          In any event, petitioner has failed to demonstrate that the trial court erred in denying his

11   motion to dismiss.  Pursuant to California Penal Code § 995, an information must be dismissed if

12   the evidence presented at the preliminary hearing was insufficient to demonstrate probable cause

13   that the defendant committed the charged offense.  Cal. Penal Code § 995(a)(2).  Probable cause

14   means "such a state of facts as would lead a [person] of ordinary caution or prudence to believe,

15   and conscientiously entertain a strong suspicion of the guilt of the accused." *People v. Mower*,

16   28 Cal.4th 457, 473 (citations omitted).  "'Reasonable and probable cause' may exist although

17   there may be some room for doubt." *Id.*  In light of these standards, petitioner's claim that the

18   trial court violated his federal constitutional rights in denying his motion to dismiss must be

19   denied.  The evidence introduced at the preliminary hearing demonstrated probable cause that

20   petitioner committed the charged offense.  *See* CT at 557-639.

21          Accordingly, for the foregoing reasons, relief on this claim must be denied.

22                          **7.  Denial of Self-Representation on Appeal**

23          In his next claim for relief, petitioner argues that the California Court of Appeals' denial

24   of his right to represent himself on appeal violated his Sixth Amendment rights.  Pet. at 50.

25   Petitioner states that he objected in writing to the appellate brief filed by his appellate counsel

26   because none of the issues he wanted to raise on appeal was contained in his opening brief.  *Id.*

1   Petitioner argues that since he was granted the right to represent himself at trial, he should have

2   been able to represent himself on appeal as well, especially where "there arises a conflict of

3   interest between the attorney and client and/or client and state who appoints indigent appellants

4   representation." *Id.* at 51.

5        The United States Supreme Court has held that a criminal defendant does not have a

6   federal constitutional right to represent himself on direct appeal from his conviction. *Martinez v.*

7   *Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152 (2000).  Thus, the failure of

8   a state appellate court to allow self-representation on appeal does not violate either the Sixth or

9   the Fourteenth Amendments to the United States Constitution. *Id.* at 160-61.  *See also Tamalini*

10  *v. Stewart*, 249 F.3d 895, 900 (9th Cir. 2001) (same).  As explained by the Sixth Circuit,

11  "[c]learly, this holding contradicts the petitioner's assertion that there exists a constitutional

12  entitlement to submit a pro se appellate brief on direct appeal in addition to the brief submitted

13  by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000).  *See also*

14  *Brown v. Clay*, No. C 06-7140 CRB (PR), 2010 WL 199779 at *5 (N.D. Cal. Jan. 13, 2010)

15  (same).  Based on these authorities, petitioner is not entitled to relief on this claim.

16             **8.  Ineffective Assistance of Appellate Counsel**

17        Petitioner also argues that his appellate counsel rendered ineffective assistance in failing

18  to raise on direct appeal the claims that he asked counsel to raise, including the claims raised in

19  the instant petition. Pet. at 52-65.  In particular, petitioner faults his appellate counsel for failing

20  to challenge the DNA evidence linking him to the murder.  *Id.*  In his lengthy argument in

21  support of this claim, petitioner also argues that various parties, attorneys, prison administrators,

22  and judges conspired to violate his constitutional rights.  *Id.*  Petitioner's arguments are

23  rambling, conclusory, and largely unsupported by the record.

24        The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

25  *Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

26  ////

1  However, an indigent defendant "does not have a constitutional right to compel appointed

2  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

3  professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751

4  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  *Id.*  Otherwise, the

5  ability of counsel to present the client's case in accord with counsel's professional evaluation

6  would be "seriously undermined."  *Id.  See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th

7  Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

8  is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

9  meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a

10 showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

11 to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this

12 context, petitioner must demonstrate that, but for counsel's errors, he probably would have

13 prevailed on appeal.  *Id.* at 1434 n.9.  Petitioner has failed to make that showing here.

14         Nothing in the record indicates that petitioner probably would have prevailed on appeal if

15 appellate counsel had raised any of his suggested claims.  Nor has petitioner substantiated his

16 claims that the conspiratorial behavior of the parties involved in his criminal trial violated his

17 right to due process or any other federal constitutional right.  Accordingly, he is not entitled to

18 relief on these claims.

19                        **9.  Denial of Attorney's Fees**

20         In his last ground for relief, petitioner claims that he should have received an award of

21 attorney's fees pursuant to Cal. Gov't Code § 800 and other state statutes for the work he

22 performed at trial and on appeal, because his prosecution was "capricious and/or arbitrary."  Pet.

23 at 66-82.  Petitioner also argues that his parents should be reimbursed for the fees they paid to

24 Mr. Broome.  *Id.* at 81.  His request does not state a cognizable federal habeas claim.  Whether

25 or not the trial court or any state authority violated state law in failing to pay attorney's fees to

26 petitioner, or reimbursement to his parents, is purely a question of state law.  As noted above, a

1   federal writ is not available for alleged error in the interpretation or application of state law.

2   *Wilson*, 131 S. Ct. at 16.  Accordingly, petitioner is not entitled to relief on this claim.

3   **10.  Request for Evidentiary Hearing**

4   Petitioner also requests an evidentiary hearing on his claims.  Pet. at 69.  Pursuant to 28

5   U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

6   (e)(2) If the applicant has failed to develop the factual basis of a
    claim in State court proceedings, the court shall not hold an
7   evidentiary hearing on the claim unless the applicant shows that-

8   (A) the claim relies on-

9   (I) a new rule of constitutional law, made retroactive to cases on
    collateral review by the Supreme Court, that was previously
10  unavailable; or

11  (ii) a factual predicate that could not have been previously
    discovered through the exercise of due diligence; and

12

13  (B) the facts underlying the claim would be sufficient to establish
    by clear and convincing evidence that but for constitutional error,
    no reasonable fact finder would have found the applicant guilty of
14  the underlying offense[.]

15  Under this statutory scheme, a district court presented with a request for an evidentiary

16  hearing must first determine whether a factual basis exists in the record to support a petitioner's

17  claims and, if not, whether an evidentiary hearing "might be appropriate."  *Baja v. Ducharme*,

18  187 F.3d 1075, 1078 (9th Cir. 1999).  *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

19  2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner requesting

20  an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

21  *Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670, *Stankewitz v. Woodford*, 365 F.3d

22  706, 708 (9th Cir. 2004) and *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).  To show

23  that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

24  entitle him to relief."  *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

25  marks and citation omitted).

26  ////

28

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to federal habeas relief. Therefore, petitioner's request for an evidentiary hearing must be denied.[9]

**III. Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: January 23, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[9] At several places in the petition, petitioner makes confusing and bizarre allegations that fail to state a cognizable federal habeas claim. *See, e.g.,* Pet. at 22-23, 48-49. Because they fail to state any claim for relief, the court will not address these allegations.